```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                          JACKSON DIVISION


DRAYTON NABERS, JR., AS RECEIVER
FOR EMERGYSTAT, INC., EXTENDED
EMERGENCY MEDICAL SERVICES, INC.,
AND MED EXPRESS OF MISSISSIPPI, LLC                    PLAINTIFF


VS.                               CIVIL ACTION NO. 3:09CV70TSL-JCS


MISSISSIPPI STATE TAX COMMISSION;
BLUE CROSS & BLUE SHIELD OF
MISSISSIPPI, A MUTUAL INSURANCE
COMPANY; MISSISSIPPI DIVISION
OF MEDICAID; AND THE ATTORNEY GENERAL
OF THE STATE OF MISSISSIPPI                            DEFENDANTS
```

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Mississippi State Tax Commission (MSTC) to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiff Drayton Nabers, Jr., as receiver for Emergystat, Inc., Extended Emergency Medical Services, Inc. (EEMS) and Med Express of Mississippi, Inc. (Med Express), has responded in opposition to the motion, and has also filed a separate, conditional motion for leave to file an amended complaint, to which the MSTC has responded in opposition. Having considered the memoranda of authorities submitted by the parties, the court concludes that the motion by the MSTC to dismiss should be denied and the motion of plaintiff Nabers to amend should be granted.

In broad summary, the complaint in this cause alleges the following: In April 2003, Emergystat, EEMS and Med Express (collectively Emergystat entities) obtained a $5,000,000 revolving line of credit from G.E. Capital Corporation (GECC) in conjunction with which the Emergystat entities executed a promissory note and a loan and security agreement by which they pledged as collateral the Emergystat entities' tangible and intangible assets, including their accounts receivable. According to the complaint, GECC took all necessary action to perfect its security interest in the Emergystat entities' property.

In 2005, the Emergystat entities defaulted on more than $2,000,000 owed on the GECC line of credit, and thereafter they ceased doing business. On January 29, 2008, GECC filed suit against the Emergystat entities in the United States District Court for the Northern District of Alabama, and immediately moved for appointment of a receiver, a remedy provided for in the the Emergystat entities' agreements with GECC. Following a hearing, on March 5, 2008, the Alabama District Court, upon finding that the Emergystat entities' cessation of their business operations exposed GECC's collateral to risk of loss or diminution, entered an order appointing Nabers as receiver "of all the Collateral identified in the loan documents," and granting him the authority, *inter alia*, "[t]o marshal, take possession of, and administer all of the Collateral, ... and to protect and preserve the collateral,

... [t]o demand, collect, and receive all proceeds derived from the Collateral, ... and [t]o file and prosecute all proper actions for ... collection of income and proceeds of the Collateral ... and recovery of possession of the Collateral." See GECC v. Emergystat, Inc., et al., Case No. CV-08-B-171-J (N.D. Ala. Mar. 5, 2008).

In the meantime, on January 25, 2008, the MSTC had begun issuing and serving distress warrants to certain account debtors of Emergystat and Med Express, including defendant BCBS-MS, MS Medicaid and the Victim Compensation Division of the Crime Prevention and Victim Services Unit of the Office of the Attorney General, based on alleged tax liens obtained against Emergystat and Med Express on January 24, 2008. Nabers alleges that on January 28, upon learning of the distress warrants, GECC provided the MSTC with actual notice of what GECC claimed was its valid and enforceable, properly perfected security interest, and prior lien on, among other things, the Emergystat entities' accounts receivable and proceeds thereof, and it further requested that the MSTC cease and desist from seizing or interfering in any way with any of the collateral encumbered by GECC's prior security interests. However, according to Nabers, the MSTC disregarded GECC's demand, and has continued to refuse Nabers' request that it comply with the Order Appointing Receiver by turning over the monies it has obtained, or may in the future obtain, in connection

3

with the distress warrants or otherwise, and by ceasing and desisting from seizing or interfering in any way with the accounts and related proceeds which are GECC's collateral. Accordingly, Nabers, as Receiver, filed the present action seeking an order declaring that GECC has a valid and enforceable, properly perfected security interest in the collateral, including the accounts receivable, which take priority over any interest that the MSTC may have in any of the collateral as a result of the distress warrants or otherwise; directing that the MSTC account for and turn over to the Receiver any funds that it has obtained, or may obtain in the future, pursuant to the distress warrants; quashing any outstanding distress warrants that have been issued and served on debtors of the Emergystat entities; and enjoining the MSTC from issuing and serving any further distress warrants for the purposes of levying on and obtaining money owed to the Emergystat entities, at least until such time as the debt to GECC is paid in full.

The MSTC has moved to dismiss Nabers' complaint, contending (1) his complaint is barred by the Tax Injunction Act; (2) his complaint is barred by the State's Eleventh Amendment immunity; and/or (3) this court should abstain on comity grounds. The court considers each asserted basis for dismissal, in turn.

The Tax Injunction Act provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection

of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. In its motion to dismiss, the MSTC argues that "[i]nsofar as [the Receiver] is seeking an order ... quashing Distress Warrants ... and enjoining the [MSTC] from further collection activity," such relief is prohibited by the Tax Injunction Act, and that this court is consequently barred from "taking jurisdiction of [the Receiver's] cause of action." In his response to the motion, Nabers maintains that the Act, as interpreted by the courts, only applies when a *taxpayer* files a federal court suit challenging the validity of a state tax which has been assessed, levied or collected from that taxpayer and seeks a federal court order that would enable the taxpayer to avoid responsibility for the subject taxes. He contends that since this is not such a suit, the Tax Injunction Act is inapplicable to his claims herein.

In Hibbs v. Winn, 542 U.S. 88, 124 S. Ct. 2276, 159 L. Ed. 2d 172 (2004), the Supreme Court considered whether the Tax Injunction Act barred a suit by taxpayers against the Arizona Department of Revenue seeking to enjoin provision of tax credits for taxpayers who made donations to "school tuition organizations," which were permitted to fund religious educational organizations. Id. at 92, 124 S. Ct. at 2281. The Court held that the action was not barred since the plaintiffs did not seek to challenge their own tax liability, and thus did not endanger

5

the collection of state tax revenue. Id. at 104-05, 124 S. Ct. 2276. The Court stated:

> [I]n enacting the TIA, Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority. Nowhere does the legislative history announce a sweeping congressional direction to prevent federal-court interference with all aspects of state tax administration.

Id. at 104-05, 124 S. Ct. at 2288. In Hibbs, the Court determined that the Act only bars cases in which "state taxpayers seek federal- court orders enabling them to avoid paying state taxes." Hibbs, 542 U.S. at 107, 124 S. Ct. at 2289. The Court found that in such circumstances, rather than filing a federal lawsuit, a taxpayer must "pursue refund suits instead of attempting to restrain collections." Id. at 104, 124 S. Ct. 2287. See Lussenhop v. Clinton County, N.Y., 466 F.3d 259 (2d Cir. 2006) (Hibbs ... explain[s] that Congress' intent in enacting the TIA was the prevention of a particular evil; namely, using federal courts as a vehicle to bring suits challenging the validity or amount of a particular tax assessed against an individual person or entity.").

Based on this interpretation of the Act, it has been recognized that "'third-party suits not seeking to stop collection (or contest the validity) of a tax imposed on plaintiffs are outside the scope of the TIA." Miller v. State of New York Div. of Tax Appeals, 480 F. Supp. 2d 574, 579 (E.D.N.Y. Mar. 15,

6

2007)(quoting Hibbs, 542 U.S. at 104, 124 S. Ct. 2276) (citing cases).

In the court's opinion, the case at bar is not one in which a taxpayer challenges its tax liability. No one denies that the underlying assessments by the MSTC on the Emergystat entities are final, due and payable. Nor does anyone herein dispute that the taxes assessed against the Emergystat entities are subject to collection pursuant to Mississippi law. Rather, Nabers' position herein is that the MSTC's efforts to satisfy the Emergystat entities' tax liability from the collateral for the entities' line of credit from GECC must fail, since GECC's lien based on its prior perfected security interest in that collateral has priority over the MSTC's tax lien.

In a highly analogous case, Director of Revenue, State of Colorado v. United States, 392 F.2d 307, 311 (10th Cir. 1968), the United States filed suit in federal court to foreclose on property that was security for an SBA loan on which the borrowers had defaulted. The State of Colorado had also procured a warrant for distraint on the same property and had constructively seized the property to satisfy the borrowers' outstanding tax liability to the State. The court rejected the State's argument that by reason of the Tax Injunction Act, the district court was without jurisdiction to suspend the collection of the state tax when a speedy and efficient remedy is provided by the Colorado statutes.

7

The court explained, "[N]o one seeks to suspend the collection of the state taxes. Indeed, it seems to be conceded that the taxes are valid, due and owing, and unpaid. *The SBA seeks only to limit the source from which the taxes may be collected*." Id. at 311 (emphasis added).

Further support for the conclusion that the Tax Injunction Act does not bar this action is found in a number of cases which have held the Act inapplicable in the context of actions by the federal government to establish the priority of a federal tax lien over a competing state tax lien on a taxpayer's property. For example, in United States v. R & E Corp., No. CIV. A. 98-1068, 1999 WL 680376, 3 (E.D. Pa. Aug. 31, 1999), the United States filed suit in federal court to foreclose its tax lien against the defendant taxpayer's liquor license. The United States joined the Commonwealth of Pennsylvania in the action because the Commonwealth also had a tax lien and hence potential interest in the property. The court held that the suit did not fall within the ambit of the Tax Injunction Act because "[t]he foreclosure action simply establishes the priority of both parties' interests relative to each other. Plaintiff, through this action, is not trying to deprive defendant of any interest it may have in the property by means of an injunction or declaratory judgment. The foreclosure action simply establishes the priority of both parties' interests relative to each other. Consequently, this

8

action does not fall within the ambit of the TIA." Id. Similarly, the case at bar is in essence a suit by Nabers to establish the priority of the GECC lien on the property that secures the GECC line of credit.

What this case is not is a suit by a taxpayer seeking to avoid the levy or collection of taxes. Like the United States in Director of Revenue, State of Colorado, supra, in this case, Nabers does not attempt to prevent the collection of the taxes which are due and payable to the State of Mississippi from the Emergystat entities; rather, he "seeks only to limit the source of funds from which the taxes may be collected." 392 F.2d at 311. The court thus concludes that the TIA does not bar this action.

The MSTC asserts that it enjoys state sovereign immunity and is immune from suit for monetary damages in federal courts pursuant to the Eleventh Amendment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted the Eleventh Amendment to provide that, in the absence of consent or waiver, states and their agencies are immune from actions brought in federal courts by their own citizens as well as by citizens of another state regardless of the type of relief sought. Pennhurst

State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984). As a state agency, the MSTC enjoys Eleventh Amendment immunity, which it has not waived. Thus, Nabers' claims for relief against the MSTC are barred by the Eleventh Amendment. However, apparently recognizing this, Nabers argues that pursuant to the Ex Parte Young doctrine, he can avoid the Eleventh Amendment bar by amending his complaint to name the appropriate MSTC officials in their official capacities as defendants rather than the MSTC itself. He has thus moved to amend his complaint to remove the MSTC as a party to this action and to instead name as defendants J. Ed Morgan, in his official capacity as Chairman for the MSTC, and Gary Stringer, in his official capacity as General Counsel for the MSTC.

Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), carves out a narrow exception to Eleventh Amendment immunity by permitting suits for prospective relief against state officials for violations of federal law by those officials. See Pennhurst, 465 U.S. at 102, 104 S. Ct. at 909. Under Ex Parte Young, a plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officials in their official capacities so long as his complaint (a) "alleges an ongoing violation of federal law" and (b) "seeks relief properly characterized as prospective." Verizon Maryland, Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152

L. Ed. 2d 871 (2002). See Aguilar v. Texas Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998) ("To meet the Ex Parte Young exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect."); Neuwirth v. Louisiana State Bd. of Dentistry, 845 F.2d 553, 555 (5th Cir. 1988) (Ex Parte Young exception "enables a federal court to entertain a suit for prospective relief against a defendant state officer upon allegations that he violated federal law, based on the legal fiction that a state officer cannot then be acting pursuant to state authority").

For purposes of the first requirement, the inquiry is limited to whether the plaintiff has *alleged* a violation of federal law and whether the violation he has alleged is "a substantial and not frivolous claim." In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 374 (2d Cir. 2005); see also In re Deposit Ins. Agency, 482 F.3d 612, 621 (2d Cir. 2007) (stating that "ordinarily an *allegation* of an ongoing violation of federal law is sufficient for purposes of the Young exception") (citing Verizon, 535 U.S. at 645, 122 S. Ct. 1753). Nabers maintains he has alleged a violation of federal law in several respects, in that pursuant to Federal Rule of Civil Procedure 66, federal common law governs both the appointment of receivers in the federal courts as well as any

11

actions brought by or against federally-appointed receivers; in that the resolution of the claims asserted herein will involve the construction and interpretation of the Alabama District Court's Order Appointing Receiver and a determination of whether the MSTC's seizure, while on actual and constructive notice of GECC's prior perfected security interest, of collateral that the Receiver is obligated to marshal, collect, and receive,0 is in direct violation of the Alabama District Court's order; in that the complaint expressly alleges that the MSTC's refusal to turn over to the Receiver the monies it has obtained, or may in the future obtain, in connection with the distress warrants or otherwise constitutes impermissible interference with the Receiver's ability and obligation, imposed by the Alabama District Court in the Order Appointing Receiver, to marshal, take possession of, demand, collect, and receive the Collateral (including the subject accounts receivable and proceeds thereof), wherever located; and in that the complaint alleges that the outstanding distress warrants also improperly interfere with the Receiver's judicially-imposed obligation to marshal, take possession of, demand, collect, and receive accounts receivable and proceeds thereof, wherever located; and in that the MSTC's alleged interference with the subject collateral constitutes an ongoing violation of federal law codified at 28 U.S.C. § 754, which provides in part that "(a) receiver appointed in any civil action. . . involving property ...

situated in different districts shall ... be vested with complete jurisdiction and control of all such property with the right to take possession thereof."

As to the second Ex Parte Young requirement, Nabers argues that the complaint seeks relief properly characterized as prospective in that it seeks not a money judgment but rather the turnover of collateral which was wrongfully seized and is being wrongfully held by the MSTC, and/or which may in the future be wrongfully seized by the MSTC.

In reply, the MSTC, though not expressly conceding the first requirement for application of the Ex Parte Young exception, has affirmatively chosen to forego addressing that requirement and has instead has focused exclusively on the second requirement, namely, the requirement that the claim be for prospective relief.  The MSTC maintains that Nabers' proposed amendment should be denied as futile since Nabers' complaint seeks monetary damages from the State.  More particularly, the MSTC argues that since all tax monies collected by the MSTC through the diversion statute are deposited into the state treasury pursuant to Mississippi Code Annotated § 27-7-75,[1] then the suit would actually be a suit

---

[1] See Miss. Code Ann. § 27-7-75 ("When requested, the commissioner shall give any person making any payment a full written or printed receipt, stating the amount paid and the particular account for which such payment was made, and showing for which instalment same is paid, and shall pay all moneys into the state treasury on auditor's warrant as other moneys are paid into the state treasury.").

against the State and any judgment would be paid by the state, so that the State's Eleventh Amendment immunity applies. It reasons that since any funds Nabers seeks to have returned must come from the Mississippi State treasury, this would result in a "monetary loss resulting from [an alleged] past breach of a legal duty,"

such that the Ex Parte Young exception does not apply. Verizon, 535 U.S. at 646, 122 S. Ct. at 1760 (quoting Edelman v. Jordan, 415 U.S. 651, 668, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)).

In the court's opinion, Nabers has the better of this argument. In an analogous case, Deposit Insurance Agency v. Superintendent of Banks of the State of New York, 482 F.3d 612 (2nd Cir. 2007), the Superintendent of the Banks of the State of New York had seized the assets of two failed foreign banks. Id. at 615. The Deposit Insurance Agency, as the foreign bankptcy administrator of the two banks, filed a petition in bankruptcy court seeking a judgment directing the Superintendent to turn over the wrongfully seized assets to the Agency. Id. In affirming the district court's rejection of the Superintendent's argument for dismissal based on Eleventh Amendment immunity, the Second Circuit wrote:

> Here, application of the (two Ex Parte Young requirements) suggests that the Eleventh Amendment does not prevent suit against the Superintendent. The gravamen of the Agency's petition is that the Superintendent is committing an ongoing violation of federal law by taking possession of and retaining assets

14

> that --under 11 U.S.C. § 304(b) & (c) (empowering a
> bankruptcy court to enjoin such proceedings and order
> turnover of the assets, and outlining the legal
> standards pursuant to which this relief may be granted)
> -- must be released to the Agency .... This allegation
> is plainly "neither insubstantial nor frivolous" as a
> legal claim, and thus satisfies the first requirement of
> the Ex parte Young doctrine. Moreover, it is undisputed
> that the injunctive relief sought--turnover of the
> assets and enjoinment of any state insolvency
> proceedings--is prospective in nature, satisfying the
> second prong of the inquiry. The Superintendent does
> not argue that the relief is retrospective or designed
> to compensate for a past violation of federal law, nor
> does she contend that any turnover of the assets would
> even minimally deplete New York's public fisc. Verizon,
> 535 U.S. at 646 (relief sought was prospective where it
> did not impose upon the state "a monetary loss resulting
> from a past breach of a legal duty on the part of the
> defendant state officials"). In short, a prima facie
> case for permitting suit under Ex parte Young is here
> established.

Id. at 618-19 (emphasis added) (some internal citations omitted).

Here, the court finds persuasive Nabers' argument that the relief he seeks will not effectively result in any monetary damages being paid from funds belonging to the state, but rather it will result in the Receiver recovering collateral that rightfully belongs to the federal receivership estate and not to the MSTC. Cf. New York O. & W. Ry. Co. v. People of State of NY., 158 F.2d 769, 770-71 (2d Cir. 1947) (petition against state officials in their official capacities not effectively a suit against the state itself and hence, Eleventh Amendment immunity inapplicable as petition sought the return of a deposit in which the state had no real proprietary or pecuniary interest; accord Continental Bank & Trust Co. v. Gold, 140 F. Supp. 252, 255 (E.D.N.C. 1956). Accordingly, the

15

proposed amendment will not be futile, and will be allowed, and while the MSTC will be dismissed based on its Eleventh Amendment immunity, the proposed defendant state officials in their official capacities have no such immunity.

The MSTC finally urges dismissal "based on the principle of comity." Its argument in this regard is as follows: Any diversion by the State of Mississippi of monies owed the Emergystat entities is done for the sole purpose of collecting taxes owed by those taxpayers, a process which is constitutional and mandatory upon state agencies and their fiscal officers; that Nabers' claim must be based on a challenge to the lawfulness of the diversion statute, Miss. Code Ann. § 7-7-43, as applied by the MSTC in this matter; and that to the extent Nabers is questioning the constitutionality or legality of the MSTC's collection and offset pursuant to § 7-7-43, this court should abstain from exercising jurisdiction over this declaratory judgment matter based on principles of comity, under which "federal courts of equity should exercise their discretionary power with proper consideration for the independence of state government in carrying out its government functions." City and County of San Francisco v. Assessment Appeals Board, 122 F.3d 1274, 1277 (9th Cir. 1997). See also Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 116, 102 S. Ct. 177, 70 L. Ed. 2d 271 (1981) ("[T]axpayers are barred by the principle of comity from

asserting § 1983 actions against the validity of state tax systems in federal courts."); Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 300-01 (1943) ("The considerations which persuaded federal courts of equity not to grant relief against an allegedly unlawful state tax . . . are persuasive that relief by way of declaratory judgment may likewise be withheld. . . . [I]t is the court's duty to withhold such relief when, as in the present case, . . . on payment of any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover it back. . . . This affords an adequate remedy to the taxpayer. . . .").

In the court's opinion, the MSTC's argument is misplaced, for Nabers is not challenging the legality of collection and offset efforts pursuant to § 7-7-43. Instead, he is simply attempting to recover funds which constitute GECC's collateral and which are subject to a prior perfected security interest in GECC's favor. That is to say, this case does not involve a constitutional or legal challenge to § 7-7-43 or any other Mississippi statutory provision, but rather involves a determination of the relative priorities as between GECC's security interest in the Emergystat entities' accounts and any interest that the MSTC may have as a result of the distress warrants or otherwise.

Based on the foregoing, the court concludes that the motion of the MSTC to dismiss has merit only on the basis of its Eleventh Amendment immunity argument; and while the MSTC is entitled to

17

dismissal on that basis, the court concludes that plaintiff should be allowed to amend his complaint to substitute as defendants J. Ed Morgan, in his official capacity as Chairman for the MSTC, and Gary Stringer, in his official capacity as General Counsel for the MSTC, and it is so ordered.

This the 25th day of August, 2009.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE