**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

| | |
|---|---|
| DRAYTON NABERS, JR., AS RECEIVER FOR EMERGYSTAT, INC., EXTENDED EMERGENCY MEDICAL SERVICES, INC., AND MED EXPRESS OF MISSISSIPPI, LLC | PLAINTIFF |
| V. | CIVIL ACTION NO. 3:09-cv-00070-CWR-FKB |
| J. ED MORGAN, IN HIS OFFICIAL CAPACITY AS CHAIRMAN AND COMMISSIONER OF THE MISSISSIPPI STATE TAX COMMISSION; AND GARY STRINGER, IN HIS OFFICIAL CAPACITY AS GENERAL COUNSEL FOR THE MISSISSIPPI STATE TAX COMMISSION | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER**

The above-styled matter is before the Court on dueling motions for summary judgment. The defendants moved the Court for judgment in their favor on August 31, 2010, and one day later, the plaintiff sought the same relief. For the reasons herein stated, the defendants' Motion for Summary Judgment [Docket No. 64] is granted in part and denied in part, and the plaintiff's Motion for Summary Judgment [Docket No. 66] likewise is granted in part and denied in part.

**FACTS**

General Electric Capital Corporation (hereinafter "GECC") is the financial services arm of General Electric. In April 2003, four entities – Emergystat, Inc. (a Mississippi corporation), Extended Emergency Medical Services, Inc. (an Alabama corporation), Med Express of Mississippi, LLC (a Mississippi limited-liability corporation), and Emergystat of Sulligent, Inc. (an Alabama corporation) – collectively executed a Loan and Security Agreement to GECC, which in turn agreed to loan $5 million under a revolving line of credit. On May 1, 2003, GECC made requisite filings

with the Mississippi Secretary of State to perfect a security interest in, among other things, all "accounts" belonging to the obligors. *See* Exhibit 9 to Complaint [Docket No. 1-12].

These companies entered into several forbearance agreements with GECC over the years, but ultimately, the obligors defaulted on the loan on January 31, 2006.

At some point following the default, GECC learned that the Mississippi State Tax Commission[1] had issued distress warrants[2] against Blue Cross & Blue Shield of Mississippi, the Mississippi Division of Medicaid, and the Office of the Attorney General (specifically, the victim-compensation fund) in connection with some of the obligors' accounts receivable. These warrants take root in tax liens filed in April 2007 – nearly four years after GECC perfected its security interest – for liabilities incurred for the period of April 1, 2000 to December 31, 2006.

On January 28, 2008, GECC provided the Commission with actual notice of its prior-perfected security interest in the obligors' accounts receivable and asked the Commission to cease and desist in its efforts to recover these funds. Some of the money owed to GECC has been remitted to the Commission in connection with the warrants, and some remains in the possession of Blue Cross, Medicaid, and the Attorney General's Office.

GECC filed suit against Emergystat Inc., in U.S. District Court for the Northern District of Alabama, and on March 25, 2008, that court appointed Drayton Nabers, Jr., as receiver for the Emergystat entities. Among other charges related to the task of receiver, the court instructed Nabers to

---

[1] The filing of the suit at bar predates the name change of this agency, which now is known as the Mississippi Department of Revenue. Nevertheless, in an effort to establish consistency with filings that predate that new label, the Court will continue to refer to the Department by its former name.

[2] A distress warrant is a warrant authorizing a court officer to distrain property. Black's Law Dictionary 1722 (9th Ed. 2009).

2

> (a) [M]arshal, take possession of, and administer all of the Collateral, wherever located, including . . . all of [the Receivership Entities'] . . . accounts receivable . . . and proceeds . . .;
>
> . . .
>
> (d) [D]emand, collect, and receive all income and proceeds derived from the Collateral . . . including those arising from [the Receivership Entities'] . . . accounts receivable and rights to payment of any kind;
>
> (e) [F]ile and prosecute all proper actions for . . . protection of the Collateral [and] . . . recovery of possession of the Collateral.

Exhibit 1 to Complaint [Docket No. 1-3].

Ultimately, Nabers, acting in his role as receiver, filed suit against Blue Cross, Medicaid, the Attorney General's Office, and the Commission. In time, the first three defendants were dismissed by mutual agreement,[3] and two Commission officials – J. Ed Morgan, the chairman of the Commission, and Gary Stringer, the Commission's general counsel (herein "the Commission defendants," notwithstanding the agency's recent name change) – were substituted in their official capacities as defendants in place of the Commission itself in order to avoid sovereign immunity. *Nabers v. Mississippi State Tax Comm'n*, 665 F. Supp. 2d 692 (S.D. Miss. 2009) (Lee, J.).

Nabers' Amended Complaint [Docket No. 30] prays that the Court will grant relief in seven forms, to wit:

> (I) declar[e] that the valid and enforceable, properly perfected security interest of GECC in the Collateral (including the subject accounts receivable of Emergystat and Med Express and proceeds thereof) is prior and superior to any interest that the

---

[3] This Court dismissed Blue Cross & Blue Shield of Mississippi by Agreed Order [Docket No. 37] on January 20, 2010, but retained jurisdiction over all Disputed Funds and ordered Blue Cross to remit, within 30 days of Final Judgment in the case at bar, all Disputed Funds to the party held entitled thereto. Likewise, the Court dismissed the Mississippi Division of Medicaid and the Attorney General's Office by Agreed Order [Docket No. 52] on July 20, 2010, under the same terms. For the sake of absolute clarity, the Court hereby declares that upon the filing of this Order, the Court will issue a Final Judgment, *see* Fed. R. Civ. P. 58, on this day, and the obligations previously imposed shall then take effect.

>MSTC may have in any of the Collateral as a result of the Distress Warrants or otherwise;
>
>(ii) direct[ ] the MSTC, through its Chairman and/or its General Counsel, to account for and turn over to the Receiver any and all monies that the MSTC has obtained, or may in the future obtain, in connection with the Distress Warrants (including, but not necessarily limited to, the $73,359.85 that the MSTC has obtained from BCBS-MS, the $130,641.42 that the MSTC has obtained from MS Medicaid, and the $2,107.98 that the MSTC has obtained from the VCD);
>
>(iii) quash[ ] the outstanding Distress Warrants that have been issued by the MSTC, through its Chairman, and served on the account debtors of the Receivership Entities (including, but not necessarily limited to, the distress warrant(s) that have been served upon BCBS-MS, MS Medicaid, and, based on information and belief, the VCD and/or the Attorney General);
>
>(iv) direct[ ] BCBS-MS to turn over to the Receiver any and all monies that BCBS-MS owes, or might in the future be determined to owe, to any or all of the Receivership Entities (including, but not necessarily limited to, at least $3,667.26 that BCBS-MS is currently holding in connection with services rendered to it by Med Express);
>
>(v) direct[ ] MS Medicaid to turn over to the Receiver any and all monies that MS Medicaid owes, or might in the future be determined to owe, to any or all of the Receivership Entities;
>
>(vi) direct[ ] the Attorney General to turn over to the Receiver any and all monies that the Attorney General and/or the VCD owe, or might in the future be determined to owe, to any or all of the Receivership Entities; and
>
>(vii) enjoin[ ] the Chairman, and all other officials, of the MSTC from issuing and serving any further distress warrants for the purposes of levying on and obtaining monies owed to any of the Receivership Entities, at least until the Indebtedness owed to GECC is paid in full.

Amended Complaint at 18-19.

## ANALYSIS

Upon reception of a motion for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Abarca v. Metro. Transit Auth.*,

404 F.3d 938, 940 (5th Cir. 2005) (reciting standard of review for summary-judgment motions). "Summary judgment is appropriate if there is no genuine issue as to any material fact . . . . The facts and evidence must be taken in the light most favorable to the non-movant." *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010).

Motions for summary judgment are common. Said motions are useful, but courts must be cautious because they seek a final judgment on the merits. *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989). The primary issue involved in the case *sub judice*, however, is well suited for summary disposition. *See, e.g.*, *Avatar Exploration, Inc. v. Chevron, U.S.A. Inc.*, 933 F.2d 314, 320 (5th Cir. 1991) (granting summary judgment in case involving a dispute of lease agreement); *FDIC v. Int'l Prop. Mgt., Inc.*, 929 F.2d 1033, 1039 (5th Cir. 1991) (employing summary judgment in determining whether, under Texas law, assignment of rent clause in deed gave mortgagee an immediate right to rents upon the mortgagor's default). Here, there is no dispute of fact. The parties merely argue as to how Mississippi law should be applied to the dispute between the parties. Simply put, the question is whether Nabers has a right to pursue the claims of the receivership entities' creditors.

**ANALYSIS**

Although the motions for summary judgment now before the Court, along with their supporting memoranda and attached exhibits, span nearly 250 pages, the parties' primary arguments are fairly condensable: Nabers argues that GECC perfected a security interest in the accounts receivable, and the Commission defendants argue that the effort is irrelevant. Despite the general "first in time, first in right" rule of secured transactions, the Commission contends that "the UCC applies to the financial relations of the *private sector* business community and not to the State of

Mississippi's collection rights pursuant to common law and statutory authority." Defendant's Memo in Opposition to Plaintiff's Motion for Summary Judgment [Docket No. 77] at 7 (emphasis added).

This Court has been unable to find any authority that supports such a contention.

Section 75-9-203 of the Mississippi Code[4] memorializes Mississippi's adherence to the general Uniform Commercial Code rule that the first party to authenticate a security agreement in collateral through the formal filing process enjoys a perfected security interest therein. In the case at bar, GECC perfected a security interest in the relevant accounts on May 1, 2003 – nearly four years before the Commission filed its tax liens in April 2007.

Therefore, the general question hanging over the instant case is whether a state tax lien takes priority over a private entity's otherwise-valid, perfected security interest. The answer appears to be answerable only in the negative. Although the case at bar concerns a conflict with tax liens, Mississippi law unambiguously commands that "[c]onflicting perfected security interests and agricultural liens rank according to priority in time of filing or perfection." Miss. Code Ann. § 75-9-322. Relatedly, the United States Supreme Court has described a "tax lien" of the Internal Revenue Service, filed pursuant to the UCC, as, simply, "a secured interest." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 206 n.14 (1983). Such a view instructs that the competition at bar between GECC's perfected security interest and the Commission's tax lien is nothing more than a struggle between competing security interests wherein the first in time – that of GECC – is first in right. Indeed, the Mississippi Supreme Court appears never to have held that a tax lien of any sort, either federal or state, will defeat a prior-perfected security interest. *See United States v. Merchs. & Marine*

---

[4] As a dispute regarding the Mississippi Department of Revenue's authority to collect taxes under its statutorily granted powers, the case at bar presents a question of state law.

*Bank*, 292 So. 2d 151, 154 (Miss. 1974) ("a security interest, to prevail [over a federal tax lien], must be perfected under applicable state law").

Nevertheless, the Court is obligated to address each of the movants' arguments in turn.

**A.     Defendant Gary Stringer is Not a Proper Party to This Suit and Should Be Dismissed.**

The Commission defendants argue, as an initial matter, that Gary Stringer, general counsel for the Commission, is not a proper defendant and should be dismissed. Stringer, according to the defendants, "serves in an advisory capacity only and is not empowered to direct the activities of the [Commission]." Def.'s Motion for Summary Judgment at 7. Therefore, according to the defense, Stringer has no authority to enforce the Department's powers and must be dismissed from the instant case.

In *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2004), the Fifth Circuit held that a state official can be sued in federal court despite the sovereign-immunity dictates of the Eleventh Amendment, but only if, *inter alia*, the plaintiff can demonstrate "an actual enforcement connection – some enforcement power or act that can be enjoined – between the defendant official and the challenged statute."*Id.* at 419. The defendants argue that no such connection exists between the Department's statutory authority and the capacity of Stringer, who is merely an advisor.

Nabers appears to concede that Stringer's connection to the purported legal violation is not direct, but he insists that Stringer is close enough to the decision-making nucleus to remain a party to the instant lawsuit. Plaintiff's Memo in Support of Response to Defendant's Motion for Summary Judgment [Docket No. 75] at 11-12. As the U.S. Supreme Court wrote in *Ex Parte Young*, 209 U.S. 123 (1908), the seminal case on Eleventh Amendment exceptions,

> [t]he fact that the state officer by virtue of his office has some connection with the enforcement of the act is the important and material fact, and whether it arises out

7

> of the general law, or is specially created by the act itself, is not material so long as it exists.

*Id.* at 157.

Nabers relies in particular on an unreported 2007 district court opinion from New York in which several defendants were sued in their official capacities as chief counsels of various state disciplinary agencies by plaintiffs seeking to enjoin enforcement of amendments to the state's attorney discipline rules. *Alexander v. Cahill*, 2007 WL 1202402 (N.D.N.Y. 2007). The *Alexander* court refused to dismiss the action despite the defendants' argument that these attorneys "merely advise[d] the various disciplinary committees, investigate[d] complaints of rules violations, and ma[d]e recommendations to the disciplinary committees." *Id.* at *2. But in that case, the "[d]efendants *concede[d]* . . . that the chief attorneys and chief counsel ha[d] significant roles in enforcing the challenged rules by initiating investigations, consulting with and making recommendations to the disciplinary committees and their chairpersons, and initiating formal disciplinary proceedings." *Id.* (emphasis added).

In the case at bar, no suggestion has been made that Stringer enjoys such authority, and the Commission defendants certainly have not conceded the fact. Nabers contends that "it cannot be denied that Mr. Stringer, by virtue of his official capacity as General Counsel for the Commission, has 'some connection' with the Commission's continued interference with the Receivers' right to possession of the Collateral . . . ." Pl. Memo in Resp. at 11. But Nabers fails to present evidence sufficient to create a genuine issue of material fact that Stringer enjoys authority similar to that of the attorneys at issue in the *Alexander* case; the evidence does not at all suggest that Stringer plays a "significant role[ ] in enforcing" the Commission's interests, such as initiating

formal internal proceedings. The evidence extends only so far as to support the conclusion that Stringer is an advisor.

As such, relevant precedent does not permit Nabers to proceed against Stringer as a defendant, even in Stringer's official capacity.

Therefore, the portion of the defendants' motion seeking summary judgment on claims made against Gary Stringer is granted.

### B.  There is No Federal Question Jurisdiction.

The defendants filed their Motion for Summary Judgment on August 31, 2010, and by that time, this Court had not ruled on their Rule 12(b)(1) motion to dismiss. But on January 19, 2011, the Court denied that motion [Docket No. 62] and conclusively determined that jurisdiction properly lies in the Southern District of Mississippi under Title 28, Section 1332 of the United States Code.

Therefore, the portion of the defendants' motion seeking summary judgment on the basis of a lack of jurisdiction is dismissed as moot.

### C.  The *Ex Parte* Young Exceptions to Eleventh Amendment Immunity are Not Applicable to the Instant Matter.

The Eleventh Amendment to the United States Constitution represented Congress' first successful effort to overturn a decision of the Supreme Court through the amendment process. *See Fed. Mar. Comm'n v. S. Carolina State Ports Auth.*, 535 U.S. 743, 752-53 (2002). After the Court held in *Chisholm v. Georgia*, 2 U.S. 419 (1793), that states enjoyed no sovereign immunity against suits brought by private citizens in federal court, Congress enacted the Eleventh Amendment, which reads: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Supreme Court recognized the chief exception to that rule more than a century later in *Ex Parte Young*, 209 U.S. 123 (1908). In that case, the Court held that the Eleventh Amendment is not offended by a private citizen's lawsuit against a state official (rather than the state itself) who is acting on behalf of the state and committing a continuing violation of federal law. *Id.* at 155-56. More formally speaking, the plaintiff may proceed against a state official so long as the former "alleges an ongoing violation of federal law" and "seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

In the case at bar, Nabers has satisfied these requirements: he has alleged a continuing interference with his obligation, imposed pursuant to federal statute and court order, to pursue the Emergystat entities' outstanding accounts, and the alleged interference is one of a continuing nature.

Moreover, in an Order dated August 25, 2009, the Southern District of Mississippi explicitly rejected the defendants' request to dismiss pursuant to the Eleventh Amendment. Although the Mississippi State Tax Commission undoubtedly enjoyed Eleventh Amendment immunity, Judge Lee found that state officials Stringer and Morgan did not. See *Nabers v. Mississippi State Tax Comm'n*, 665 F. Supp. 2d 692, 699 (S.D. Miss. 2009).  Therefore, if for no other reason than adherence to the "law of the case" doctrine, the Eleventh Amendment argument should be rejected.

Therefore, the portion of the defendants' motion seeking summary judgment on the basis of Eleventh Amendment immunity is denied.

**D.     Receivership Common Law Supports the Department's Actions.**

The defendants argue that, "[a]s a general rule of law, a receiver possesses no rights with respect to the property in his possession superior to those which would be possessed by the defendant

10

individual or corporation whose property was thrown in the hands of the court." Defendant's Memo in Support of Motion for Summary Judgment [Docket No. 65] at 24 (citing 2 Clark on Receivers § 362). The granting of Nabers' requests for relief, in the defendants' view, would direct to Nabers "more money than Plaintiff is entitled to receive." Def. Memo at 25. Therefore, according to the defendants, Nabers enjoys no standing to bring the present action.

The defendants do not state with any degree of clarity the manner in which Nabers' victory would result in a windfall. Presumably, the argument rests on the theory that the funds collected by the Department are, in fact, tax liabilities truly owed to the Department by the Emergystat entities.

In rebuttal, Nabers argues that a receiver's authority in any given case depends "on the authority granted by the appointing court and actually exercised by the receiver." *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 626 (6th Cir. 2003). In the case at bar, the Alabama court specifically charged Nabers to "marshal, take possession of, and administer all of the Collateral, wherever located, including . . . all of [the Receivership entities'] . . . accounts receivable . . . and proceeds . . . ." Exhibit 1 to Complaint. Such a charge undoubtedly includes the accounts receivable located in Mississippi with Blue Cross, Medicaid, and the Attorney General's office.

It is true, as the Fifth Circuit has held, that a receiver "merely stands in the shoes of the insolvent [party]." *FDIC v. Ernst & Young*, 967 F.2d 166, 170 (5th Cir. 1992) (quotations omitted). In the case at bar, neither party disagrees that the accounts receivable in question were not owed to GECC but instead were owed to the Emergystat entities. Ultimately, though, the distinction does not persuade in favor of the defendants. The defendants correctly argue that, generally speaking, "[t]he receiver has . . . no greater right than the [receivership entity] has: he stands in its shoes. If the [receivership entity] could not have enforced a liability upon the defendants . . ., the receivership

cannot enforce it." *Davis v. Brown*, 94 U.S. 423, 427 (1876). However, that rule is not always so simple as it seems, as a Sixth Circuit decision cited favorably by the Fifth Circuit in December illustrates.

> While it is true that the receiver can acquire no greater legal rights or powers with respect to . . . property than [the receivership entity] possesses, the receiver's powers are not limited to the legal rights of the debtor-taxpayer. Upon his appointment, the receiver succeed[s] the rights of not only the debtor, but also the creditor. He assume[s] the power to enforce the rights which the creditors, but for the proceedings under which the receiver was appointed, might have enforced in their own behalf.

*McGinness v. I.R.S.*, 90 F.3d 143, 146 (6th Cir. 1996) (cited favorably by *Janvey v. Alguire*, 2010 WL 5095506 at *16 n.10 (5th Cir. 2010)). *See also Janvey*, 2010 WL 5095506 at *17 ("[T]he Receiver contends that receivers have long held the power to assert creditor claims. We agree.").

The case at bar falls squarely under this rule. Indeed, Nabers has asserted no interest in the accounts that remains with the Emergystat entities; this action exists purely on behalf of the receivership entities' creditors. But because receivers have standing to bring such actions, the defendants' argument on this point has no merit.

Judge Lee, who oversaw this case for most of its existence, instructively summarized Nabers' position with regard to the defendants' arguments about tax liability. "Nabers does not attempt to prevent the collection of the taxes which are due and payable to the State of Mississippi from the Emergystat entities; rather he seeks only to limit the source of funds from which the taxes may be collected." *Nabers v. Mississippi State Tax Comm'n*, 665 F. Supp. 2d 692, 697 (S.D. Miss. 2009) (quoting *Dir. of Revenue v. United States*, 392 F.2d 307, 311 (10th Cir. 1968)). Accordingly, there is no windfall.

Therefore, the portion of the defendants' motion seeking summary judgment on the basis of a lack of standing is denied.

**E.        State Setoff Statute Takes Priority Over the GECC Security Interest.**

Finally, the Commission defendants argue that because the Emergystat entities owed money to the State (in the form of tax liabilities) while the State simultaneously owed money to the Emergystat entities (in the form of the accounts receivable at issue), Mississippi's "setoff statute" permitted the Department to seize those accounts. In a nutshell, Section 7-7-43 of the Mississippi Code commands that anyone overpaying taxes will receive an "allowance" with the collection agency but that the allowance will in turn be applied against any outstanding tax liability.

Nabers offers several arguments in rebuttal, but two carry the day. First, with regard to the merits of the defendants' argument, Section 7-7-43 deals strictly with tax liabilities and not with contractual debts owed by the State. The defendants argue that Section 7-7-43 is implied into all contracts with the State, but they offer no Fifth Circuit or Mississippi Supreme Court authority for that position, and none appears to exist. Indeed, for many years, the Mississippi Supreme Court has been loathe to read terms into contracts where none exist, as evinced by the words of Justice Griffith in a 1933 case:

> [W]e are directly requested to read into the written agreement between these parties a further provision, and to insert that provision to the same effect as if expressly therein written by the parties . . . . To such a request we are constrained to return a negative response. It is fundamental in the performance of the judicial office that courts will enforce valid contracts as made between competent parties, but will never make contracts for the parties and then enforce them. And it is but a corollary of the principle just stated that, unless the implication be indispensable or inescapable, courts will be reluctant to embark upon the dangerous venture of importing into an agreement, by declaratory resort to implication, what so far as the court may definitely know was not at the moment of the contract actually agreed upon by the parties[.]

*Goff v. Jacobs*, 164 Miss. 817, 145 So. 728, 729 (1933).  *See also Poole v. McCurty*, 229 Miss. 170, 176, 90 So.2d 190, 193 (1956); *Hartford Fire Ins. Co. v. Williams,* 149 Miss. 123, 115 So. 199

13

(1927). If any court is to rebuke that admonition and recognize the implicit term for which the defendants advocate, then it will not be this court of limited jurisdiction.

Second, from a procedural point of view, this motion appears to mark the first instance at which the defendants have asserted a right to a setoff. Specifically, the argument was not mentioned in the defendants' Answer, although it is now being wielded as an affirmative defense. For that reason, even if the merits of the suggestion were compelling, the Court still would not grant relief on the basis thereof. See Fed. R. Civ. P. 8(c).

Therefore, the portion of the defendants' motion seeking summary judgment on the basis of an implied right to a setoff is denied.

The Court now turns to the arguments urged by the Plaintiff.

**A.    GECC Has a Valid and Enforceable, Properly Perfected Security Interest in the Accounts and Proceeds Thereof.**

Nabers begins his case for summary judgment with his central argument, which is that GECC properly perfected a security interest in the Emergystat entities' accounts receivable long before the Commission ever filed tax liens thereon. The issue is so obvious that the defendants concede the point. Defendant's Memo in Opposition to Plaintiff's Motion for Summary Judgment at 6-7.

That conclusion leaves open, of course, the question of whether GECC's perfected security interest compels judgment for the Emergystat entities' receiver.

**B.    GECC's Valid, Enforceable, and Properly Perfected Security Interest in the Accounts and Proceeds Thereof, and Therefore in the Seized and Held Funds, is Superior to Any Interest That the MSTC and/or Commission Defendants May Have or Claim to Have. As a Result, the Receiver is Entitled to Possession of Those Funds.**

The second portion of Nabers' motion flows from the first. Essentially, Nabers argues that, if one agrees that GECC's security interest was perfected previous to the date on which the

Commission filed its tax lien, then the case is over. Ultimately, for the case at bar, this is where the proverbial rubber meets the road.

The defendants' strongest counterargument to Nabers' point is that, because the State and the Emergystat entities owed each other money (the State owed accounts and the Emergystat entities owed tax liabilities), the State was entitled to a setoff. See *supra* at 13-14 (Defendant's Fifth Argument). The inadequacies of that argument have been discussed herein with detail sufficient to make additional explanation redundant, but suffice it to say that the Commission defendants have failed to show the existence of such a right.

The Court is satisfied that, even when viewing the evidence in the light most favorable to the Commission defendants, Nabers has established that no genuine issue of material fact exists to oppose his pursuit of relief. Therefore, Nabers is entitled to summary judgment.

## CONCLUSION

The Commission defendants have established that no genuine issue of material fact exists as to the impropriety of general counsel Gary Stringer's participation as a party in the case at bar. Therefore, to the extent that the defendants' Motion for Summary Judgment requests dismissal of Stringer as a defendant, the motion is GRANTED IN PART. In all other respects, the motion is DENIED IN PART.

Likewise, to the extent that Nabers' Motion for Summary Judgment seeks relief against Stringer, the receiver's Motion for Summary Judgment is DENIED IN PART.

However, Nabers has established that he is legally entitled to pursue the claims of the receivership entities' creditors, *Janvey*, 2010 WL 5095506 at *17, and that no genuine issue of material fact exists as to the claim that one such creditor has a valid, prior perfected security interest

in the accounts receivable at the center of the case at bar. Therefore, to the extent that Nabers' Motion for Summary Judgment seeks relief against J. Ed Morgan, in his official capacity as Chairman of the Mississippi State Tax Commission, the motion is GRANTED IN PART in the following respects:

The Court hereby declares that GECC has a valid, enforceable, prior perfected security interest in the accounts receivable at issue in the case at bar, and that the aforementioned security interest is superior to any interest that the Mississippi State Tax Commission may possess therein.

The Court hereby enjoins J. Ed Morgan, in his official capacity as Chairman of the Mississippi State Tax Commission, to account for and to remit to Nabers, in his role as receiver, any and all monies that the Commission has obtained in connection with the distress warrants at issue in the case at bar (including those monies referred to within Nabers' Amended Complaint).

Because the Commission had no legal entitlement to the accounts at issue in the case at bar, the distress warrants issued against them were issued in violation of law. Therefore, the Court quashes the same and enjoins their effects.

Consistent with the Order [Docket No. 37] dated January 20, 2010, in which this Court dismissed Blue Cross & Blue Shield of Mississippi as a party to the case at bar but retained jurisdiction over the Disputed Funds within its possession, the Court hereby orders Blue Cross & Blue Shield of Mississippi to remit any Disputed Funds within its possession to Drayton Nabers, Jr., in his capacity as Receiver for the Emergystat entities.

Consistent with the Order [Docket No. 52] dated July 20, 2010, in which this Court dismissed the Mississippi Division of Medicaid and the Attorney General of Mississippi as parties to the case at bar but retained jurisdiction over the Disputed Funds within their possessions, the

Court hereby orders the Mississippi Division of Medicaid and the Attorney General of Mississippi to remit any Disputed Funds within their possessions to Drayton Nabers, Jr., in his capacity as Receiver for the Emergystat entities.

The Court hereby enjoins J. Ed Morgan, in his official capacity as Chairman of the Mississippi State Tax Commission, from issuing and serving further distress warrants for the purposes of levying on and obtaining secured monies owed to any of the receivership entities until the debt secured by GECC's prior perfected security interest is satisfied.

SO ORDERED this 2nd day of February 2011.

/s/ *Carlton W. Reeves*
Hon. Carlton W. Reeves
United States District Court Judge